UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LORENZO GAFFNEY,

       Petitioner,

            CASE NO. 2:08-CV-13462
v.             JUDGE ARTHUR J. TARNOW
            MAGISTRATE JUDGE PAUL J. KOMIVES

NICK LUDWICK,

       Respondent.
                          /

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    D.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            a.  Failure to Challenge Voluntariness of Statement . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            b.  Failure to Call Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.   *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    F.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*     \*     \*     \*     \*

I.   RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.  REPORT:

A.  *Procedural History*

    1.    Petitioner Lorenzo Gaffney is a state prisoner, currently confined at the St. Louis

Correctional Facility in St. Louis, Michigan.

2. On July 21, 2006, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court. On August 4, 2006, he was sentenced to a term of 20-35 years' imprisonment on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3. Following his conviction, petitioner filed a motion for a new trial and an evidentiary hearing in the trial court, asserting that his trial counsel was ineffective for failing to seek a hearing to challenge the voluntariness of his statement to the police, and for failing to call witnesses. The trial court denied both a new trial and an evidentiary hearing.

4. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AND IT FURTHER COMMITTED REVERSIBLE ERROR WHEN IT DENIED HIS MOTION FOR AN EVIDENTIARY HEARING TO DETERMINE THE VALIDITY OF SAID CLAIM.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Gaffney*, No. 272908, 2008 WL 681496 (Mich. Ct. App. Mar. 13, 2008) (per curiam).

5. Petitioner sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Gaffney*, 481 Mich. 917, 750 N.W.2d 219 (2008).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 11, 2008. As grounds for the writ of habeas corpus, he raises the claim that he raised in

the state courts.

7.   Respondent filed his answer on December 22, 2008.  He contends that petitioner's claim is without merit.

B.   *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the February 15, 2006, shooting at a house which resulted in the death of an occupant of the house.  Petitioner was tried with his codefendant Leon Mingo. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendants Mingo and Gaffney are cousins, and this case arises out of a killing that occurred during a gunfight involving both. On February 15, 2006, Jahon Duncan met Mingo, Gaffney, and Gaffney's brother, Deandre,[3] near Third and Calvert Streets in Detroit. Around this time, Tony Turner came out of the house at 749 Calvert Street and called to Duncan. Duncan crossed the street to see Turner, while Mingo and Gaffney stayed on the other side of the street. According to Duncan, Turner then yelled at Gaffney and Mingo in a threatening manner and the three started arguing. Duncan heard someone yell, "What you looking at [sic]?" and saw Mingo and Turner pull out their guns and point them at each other.
>
> [3]No last name was provided.
>
> Several different accounts exist of what occurred next. According to Duncan, after someone yelled, "What you looking at [sic]," and Mingo and Turner pulled out guns and pointed them at each other, Gaffney grabbed Mingo's gun and ran toward the alley near Calvert and Collingwood Streets with Mingo.
> According to a statement Gaffney later provided police, Turner shot at him first and Mingo gave Gaffney a nine-millimeter handgun. Gaffney, Mingo, and Deandre then ran through the alley to Gaffney's house to get some more guns. Mingo retrieved an AK-47 from the house for himself, while Deandre gave Gaffney an AK-47. Gaffney, Mingo, and Deandre returned to the alley between Collingwood and Calvert Streets. Turner was on the porch at 749 Calvert. Gaffney fired his AK-47 eight times at Turner, and then ran home and called his girlfriend to come and pick him up.[4]
>
> [4]This statement was only admitted against Gaffney.
>
> According to Mingo's statement to police, there had been an ongoing fight between Gaffney and Turner before the date at issue. When Mingo first saw Turner across the street, while walking with Duncan and Gaffney, he thought that Turner

3

was armed, so he pulled out his nine-millimeter handgun and held it at his side. Shortly thereafter, Gaffney asked Mingo for the nine-millimeter, and Mingo gave it to him before running into an alley. Mingo then heard gunfire and ran to his house where he retrieved an AK-47, which he gave to Gaffney. Gaffney ran and started firing the AK-47. Mingo, however, ran back into the house to retrieve an "SK" and returned to the corner. Mingo denied firing a gun during this entire incident.[5]

[5]This statement was only admitted against Mingo.

Latoya Hall was at 749 Calvert Street while these shootings occurred. She was with several other adults and children, including Turner's girlfriend, Shavace Lowman, and eight-year-old Tyshawn Stinson. After hearing two rounds of gunfire, Hall looked out the side window of the house and saw Mingo, Dario, Gaffney, defendant Gaffney's brother, and Duncan, as well as a fourth individual, in an alley in front of the house pointing their guns at the house. Bullets started coming into the house, and the children congregated near the front window to watch events unfold. As Hall went to take the children away from the window, Stinson was shot in the head and fatally wounded.

*Gaffney*, 2008 WL 681496, at *1-*2, slip op. at 1-3.

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.  *Analysis*

Petitioner contends that his trial counsel was ineffective for failing to challenge the voluntariness of his statement to the police, and for failing to present witnesses who could have testified that he did not fire any shots at the house. Petitioner also contends that the state court erred in failing to afford him an evidentiary hearing on these claims. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.  *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were

6

so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

  2. *Analysis*

    *a. Failure to Challenge Voluntariness of Statement*

Petitioner first contends that counsel was ineffective for failing to challenge the voluntariness of his statement to the police. To be entitled to habeas relief on this claim, petitioner must establish

7

both "that had the motion been filed, there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different had the evidence been suppressed." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Here, petitioner cannot show that had counsel moved to suppress his statements to the police, the motion would have been granted.

As the Supreme Court explained in *Jackson v. Denno*, 378 U.S. 368 (1964), "a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Jackson*, 378 U.S. at 376. "Determining whether a confession is 'voluntary' for due process purposes entails an examination into the 'totality of the circumstances' to determine whether the confession was procured by acceptable techniques that draw upon an essentially free and unconstrained choice or by unacceptable tactics that extract their results from an overborne will. The critical line of distinction is between 'self-direction' and 'compulsion.'" *Cooper v. Scroggy*, 845 F.2d 1385, 1390 (6th Cir. 1988) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)); *accord Dickerson v. United States*, 530 U.S. 428, 434 (2000). It is not enough that a defendant's will was "overborne" by some factor for which state officials are not responsible. "Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession." *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). There is no bright line test for determining whether a confession is voluntary, nor is any one factor dispositive. Rather, a court must "look[] to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case. Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and

extent of the questioning; and the use of physical punishments, such as the deprivation of food or sleep." *United States v. Mahan*, 190 F.3d 416, 422-23 (6th Cir. 1999) (internal quotation and citation omitted); *accord*, *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

At the preliminary examination, petitioner's then-counsel extensively questioned the officer who took the statement regarding the taking of the statement. Sergeant Michael Russell testified that petitioner was taken to his office at 1:45 a.m. shortly after his arrest. Petitioner sat in Russell's office for about one hour and fifteen minutes before Russell had the opportunity to speak with him. During this time, petitioner was not handcuffed. Petitioner was read his rights, and initialed the form waiving those rights. Petitioner did not invoke his rights to counsel or to remain silent. After about 10 minutes of questioning, petitioner gave a statement. *See* Prelim. Exam. Tr., at 119-134. At the conclusion of counsel's *voir dire* of Sergeant Russell, the court asked counsel whether there was any objection to admitting Russell's testimony regarding petitioner's statement. Counsel indicated that he had no objection for purposes of the preliminary examination, stating "we'll deal with it at a *Walker* hearing." *Id*. at 134. Petitioner contends that despite this statement, his subsequent trial counsel did not file a motion to suppress his statement. He contends that counsel was aware that he had only a sixth grade education and had difficulty reading and writing, and thus should have filed a motion to suppress the statement.

Regardless of whether counsel should have filed a motion to suppress, petitioner cannot show that he was prejudiced because he cannot show a reasonable probability that such a motion would have been granted. Petitioner does not contend that his statement was, in fact, involuntary in that his will was overborne by police conduct. Nor does he argue that the statement was, in fact,

9

taken in violation of his rights to remain silent or to counsel. He contends only that he had limited education and difficulty reading and writing. Neither fact, however, renders his confession involuntary. While "[a]ge, education, and experience with the criminal justice system are also factors which are considered in determining whether a confession was voluntary, . . .a defendant's 'inability to read and write does not necessarily render his confession involuntary. A confession will be considered involuntary only if the defendant's will was overborne, law enforcement officers acted improperly, or the confession was not the product of a rational intellect.'" *United States v. DeCoteau*, 602 F. Supp. 2d 1120, 1129 (D.N.D. 2009) (quoting *Howard v. Caspari*, 99 F.3d 895, 898 (8th Cir.1996)). As the Supreme Court explained in *Connelly*, the fact that mental characteristics of defendant are relevant to voluntariness calculation "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Connelly*, 479 U.S. at 164. Thus, "an inability to read or write does not, by itself, establish that the suspect is incapable of making a voluntary and intelligent decision." *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002); *see also*, *Nevis v. Trombley*, No. 07-11951, 2009 WL 3199892, at *4 (E.D. Mich. Sept. 29, 2009) (Battani, J.). For this reason, the federal courts have repeatedly rejected involuntary confession claims which were premised on nothing more than a defendant's low intellectual functioning or inability to read or write. *See DeCoteau*, 602 F. Supp. 2d at 1130 (citing cases).

Here, petitioner does not allege that any testimony given by Sergeant Russell at the preliminary examination was incorrect. Nor does he allege that he was subjected to any physical or psychological pressure. He, in fact, does not contend that his will was overborne in any way. Rather, petitioner's claim is limited to the allegation that he had a low level of schooling and

10

difficulty reading and writing. These facts, standing alone, however, are insufficient to show that petitioner's will was overborne by any official conduct. And in the absence of any allegation that his will was in fact overborne, there is no basis on which the Court could conclude that the confession was involuntary. It follows, therefore, that petitioner cannot show a reasonable probability that, had counsel filed a motion to suppress, it would have been granted. Because petitioner cannot make this showing, he is not entitled to habeas relief on this claim.

### b. Failure to Call Witnesses

Petitioner also contends that counsel was ineffective for failing to call witnesses who could have testified that he did not fire a gun at the house. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his

11

ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

Here, petitioner has offered nothing to show that any witnesses existed who were not called and who could have testified as he claims. In denying his motion for evidentiary hearing, the trial court noted that petitioner had failed to provide any indication of what these witnesses would have testified to if they had been called at trial. Petitioner contends that he could not offer this evidence without the evidentiary hearing that was denied him. This is not so. While petitioner may not have been able to provide proof of their testimony without an evidentiary hearing, he certainly could have made a proffer regarding what the substance of their testimony would have been. More fundamentally, apart from the substance of their testimony petitioner did not provide, either to the state court or to this Court, the names of the witnesses counsel should have called. And because defendant contends that he had given these names to trial counsel, there was no impediment to his providing the names either to the state court or this Court. Without some indication of who these witnesses were and the bases of their expected testimony, petitioner has failed to meet his burden of demonstrating that counsel was ineffective.

Furthermore, petitioner cannot show a reasonable probability that the result of the proceeding would have been different even if counsel had called additional witnesses to testify that they did not

see petitioner fire a gun. At trial, a number of the prosecution's own witnesses testified that they did not see who fired the shots that killed the victim. *See* Waiver Trial Tr., Vol. I, at 29, 31, 32, 45, 64-65, 66-67; Vol. II, at 155. Against this evidence the prosecution presented evidence that petitioner ran into the alley armed with an AK-47 shortly before the shots were fired, as well as petitioner's confession. The trial judge credited this latter evidence, concluding that petitioner was the shooter. *See id.*, Vol. IV, at 19-20. It is doubtful that additional testimony from witnesses that they did not see petitioner shoot would have altered the trial judge's findings, in light of the testimony of the prosecution's own witnesses that the trial judge rejected. More importantly, the question of who fired the fatal shot was not relevant. The trial judge found petitioner's co-defendant guilty as an aider and abettor. *See id.* at 20-21, 26. Here, even assuming that petitioner did not fire the fatal shot, there is no question in the evidence that petitioner was part of the initial confrontation, went back into the house to retrieve a gun, and went into the alley with his co-defendant armed with the gun. Petitioner does not suggest that any of his missing witnesses would have contradicted these facts, which were established by all of the prosecution's witnesses. Thus, even if petitioner's co-defendant was the shooter, the trial court would have found defendant guilty as an aider and abettor for the same reason that it found petitioner's co-defendant guilty as an aider or abettor when it concluded that petitioner was the shooter. Thus, petitioner cannot establish that he was prejudiced by counsel's failure to interview and call his missing witnesses at trial, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.  *Evidentiary Hearing*

Petitioner also contends that the trial court erred in denying him an evidentiary hearing in connection with his motion for new trial. To the extent that petitioner raises this claim as an

independent basis for habeas relief, the claim is without merit. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). The trial court's failure to hold an evidentiary

14

hearing, even if erroneous under state law, does not entitle petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d 925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990). In short, petitioner's challenge to the state court post-conviction proceedings is not cognizable on habeas review.

To the extent petitioner contends that the trial court's failure to hold an evidentiary hearing entitles him to such a hearing here, the Court should disagree. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Even assuming that an evidentiary hearing were permitted under § 2254(e)(2), such a hearing is not necessary here. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

15

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted). Thus, "'an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'" *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

As explained above, all of petitioner's ineffective assistance of counsel claims can be resolved by reference to the existing record. To the extent that petitioner contends an evidentiary hearing is necessary to support his claim that counsel should have filed a motion to suppress his statement, as noted above petitioner has offered no argument that his statement was involuntary. Petitioner merely points to his lack of education and difficulty reading and writing, facts which alone do not provide any basis for finding his confession to have been involuntary. With respect to petitioner's failure to call witnesses claim, petitioner has failed to provide any information regarding what these witnesses could have testified to at trial or what they would testify to at an evidentiary hearing in this Court. Indeed, as noted above, petitioner has failed to even provide the names of these witnesses, despite his allegation that he provided those names to counsel. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996). Petitioner's "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). And, in any event, even if counsel could have presented witnesses to testify that petitioner did not fire the fatal shot, petitioner cannot show a reasonable probability that the result of the proceeding would have been different because it is likely that the trial court would have found him guilty as an aider and abettor, in light of its finding with respect to petitioner's co-

defendant. Thus petitioner is not entitled to an evidentiary hearing under Rule 8.

E.        *Recommendation Regarding Certificate of Appealability*

       1.        *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, petitioner has made no allegations which, if true, would suggest that his confession was involuntary. Thus, the conclusion that petitioner has failed to demonstrate that he was prejudiced by counsel's failure to file a motion to suppress his statement is not reasonably debatable. Likewise, petitioner has failed to make any proffer regarding the names and supposed testimony of the witnesses counsel allegedly failed to interview and call at trial, and in any event the purported testimony of these witnesses would not have created a reasonable probability of a different result in light of petitioner's guilt as an aider and abettor even if he did not fire the fatal shots. Thus, the

resolution of this ineffective assistance of counsel claim is not reasonably debatable. Finally, to the extent petitioner raises the trial court's denial of an evidentiary hearing as a substantive basis for habeas relief, it is beyond debate that such a claim is not cognizable in a habeas corpus proceeding. Accordingly, the Court should deny petitioner a certificate of appealability.

F. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/Paul J. Komives
                                              PAUL J. KOMIVES
Dated: 5/18/10                    UNITED STATES MAGISTRATE JUDGE

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on May 18, 2010.
>
>                                   s/Eddrey Butts
>                                     Case Manager